UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA  EASTERN DIVISION

| | | |
|---|---|---|
| KAREN YOUNG, | ) | No. ED CV 04-01389 SH |
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration | ) ) ) | |
| Defendant. | ) ) | |

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. This action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The Plaintiff and the Defendant have filed their pleadings, the Defendant has filed the certified transcript of record, and the parties have filed a

Joint Stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On April 30, 2002, Karen Young filed an application for SSI alleging an onset date of January 30, 1999. [Administrative Record ("AR") 14-15, 112-113] The Plaintiff alleged an inability to work due to degenerative disc disease, asthma, high blood pressure, carpal tunnel syndrome, neck pain, seizures, and depression. [AR 15, 67, 113] At a later point, the Plaintiff claimed additional impairments including knee problems. [AR 15, 74] On July 26, 2004, an Administrative Law Judge ("ALJ") denied her claim. [AR 47, 50] The ALJ found that the Plaintiff was ineligible for benefits before January 1, 2003 because the period for adjudication began on April 30, 2002, and the Plaintiff was engaged in gainful activity from that date up until December 31, 2002. [AR 47-48] Furthermore, despite the Plaintiff's severe impairments, the ALJ found that she retains the residual functional capacity to perform light work. [AR 48-50] The Plaintiff challenges the ALJ's decision, asserting that the ALJ erred by failing to give proper weight to the opinion of her treating physician.

## **DISCUSSION**

The Plaintiff alleges that the ALJ erred by failing to properly weigh Dr. Dittemore's Global Assessment of Functioning ("GAF") and mental work capacity evaluations of the Plaintiff. The court disagrees.

Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also 20 C.F.R. § 416.927(d)(2). "However, the opinion of the treating physician is not necessarily conclusive as to . . . the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "[T]he ALJ may reject the opinion of a treating physician

in favor of a conflicting opinion of an examining physician" if the ALJ sets forth specific and legitimate reasons, based on substantial evidence, for doing so. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). This burden is met when the ALJ sets out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. [citation omitted]" Id.

An ALJ may disregard a treating physician's opinion that is primarily based on subjective complaints when the claimant has been found not credible. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan, 169 F.3d at 602; Batson, 359 F.3d at 1195. Additionally, an "ALJ need not accept the opinion of . . . a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Batson, 359 F.3d at 1195. Furthermore, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954.

In this case, the ALJ wrote an extremely detailed and in-depth 37 page decision which analyzed the conflicting psychiatric opinions and medical evaluations of at least two treating physicians, six examining physicians, two non-examining physicians, and four social workers. [AR 14-50] In addition, the ALJ repeatedly discussed the various opinions and evaluations performed by Dr. Dittemore, the Plaintiff's treating physician, [AR 23-24, 28, 29, 30, 33, 38-39], and specifically mentioned Dr. Dittemore's GAF and work capacity evaluations [AR 24, 29].

The ALJ also stated the reasons why he was disregarding the treating physician's opinion. [AR 38-40] His reasons for rejecting Dr. Dittemore's GAF and the work capacity evaluations included: that there was "no indication that [Dr.

Dittemore] had the benefit of the claimant's records during imprisonment,"[1] [AR 38], the treating physician is not board certified [AR 38, 846], the treating physician based her diagnosis primarily on self-reporting statements made by the Plaintiff, (who the ALJ found to be not credible), and not on objective medical evidence[2] [AR 39], and the opinion of the treating physician was contradicted by the opinions of at least two examining physicians, two non-examining physicians, and one social worker[3] [AR 38-40].  In addition, Dr. Dittemore's work capacity evaluation is a conclusory checklist and no objective medical evidence is listed to support the assessment.  [AR 38, 840-41]

---

[1] For example, Dr. Dittemore repeatedly states in the medical records that the Plaintiff, based upon her behavior, might be mentally retarded [AR 767, 814, 827], yet the Plaintiff received high scores on a cognitive test administered while she was incarcerated, which determined that the Plaintiff did not need any support services [AR 634].  This is particularly significant because it casts into doubt later diagnoses made by Dr. Dittemore that rely primarily on statements made by the Plaintiff and not on objective medical evidence.

[2] There is no evidence that Dr. Dittemore performed any particular tests before forming her diagnoses.  Instead she relied heavily on the symptoms that the Plaintiff reported to her.  In addition, there is strong evidence that the Plaintiff was malingering and not credible. [See, e.g., AR 220 (stating on the Daily Activities Questionnaire that the Plaintiff cannot read or write); 850-51 (testifying that she could read and write); 729 (stating that there was "very strong evidence of malingering").

[3] Dr. Smith, an examining physician, diagnosed the Plaintiff with a GAF score of 80 and stated that her prognosis was good. [AR 729-30] Dr. Rose, an examining physician, found that the Plaintiff had high cognitive test scores. [AR 634]  Dr. Schrift, a non-examining physician, stated that the Plaintiff had no medically determinable impairment. [AR 740]  Dr. Gregg, a non-examining physician, found that the Plaintiff could perform work. [AR 785]  Ms. Barbee, a social worker, diagnosed the Plaintiff with a GAF score of 55 and stated that the prognosis for the Plaintiff's successful re-entry into the community was fair. [AR 722]

## CONCLUSION AND ORDER

Therefore, because the ALJ set forth specific and legitimate reasons, based on substantial evidence, for rejecting the treating physician's opinion as to the Plaintiff's GAF and work capacity, the ALJ did not improperly weigh the treating physician's opinion and the decision of the Commissioner is affirmed.

DATED:   11/8/05

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE